# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **DIANE SUE H.,**[1] ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **CIVIL ACTION** |
| v. ) | |
| ) | **No. 20-1343-JWL** |
| **KILOLO KIJAKAZI,**[2] ) | |
| **Acting Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |
| _____) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Disability Insurance Benefits (DIB) pursuant to sections 216(i) and 223 of the Social Security Act, 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act). Finding no error in the Administrative Law Judge's (ALJ) decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

**I.     Background**

---

[1] The court makes all its "Memorandum and Order[s]" available online. Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

[2] On July 9, 2021, Kilolo Kijakazi was sworn in as Acting Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Ms. Kijakazi is substituted for Commissioner Andrew M. Saul as the defendant. In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

Plaintiff protectively filed an application for DIB on December 18, 2017. (R. 20, 143-44). After exhausting administrative remedies before the Social Security Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Plaintiff claims the ALJ erred in failing to apply the test from Frey v. Bowen, 816 F.2d 508, 517 (10th Cir. 1987) in considering her failure to follow prescribed treatment when assessing her allegations of symptoms from her Crohn's disease. (Pl. Br. 5-9).

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). "Substantial evidence" refers to the weight, not the amount, of the evidence. It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). Consequently, to overturn an agency's finding of fact the court "must find that the evidence not only supports [a contrary] conclusion, but compels it." I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988) (brackets in Bowling)).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. § 404.1520; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the

3

Commissioner assesses claimant's residual functional capacity (RFC).  20 C.F.R. § 404.1520(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, she is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).  The court addresses Plaintiff's allegation of error.

**II.     Discusion**

Plaintiff notes that the ALJ discounted her allegations of disabling symptoms resulting from her Crohn's disease, at least in part, because of a lack of ongoing treatment for the impairment through 2018 and 2019.  (Pl. Br. 6).  She claims this is error because the ALJ failed to apply the four-part test for a failure to undertake treatment.  Id. (citing Frey, 816 F.2d 517).  Plaintiff acknowledges another line of cases in the Tenth Circuit holding the Frey test does not apply in certain circumstances.  Id. (citing Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000)).  She argues that Qualls applies only to situations

where the ALJ is considering a claimant's attempts to relieve symptoms such as pain whereas Frey applies in situations where the claimant has failed to follow prescribed treatment.  (Pl. Br. 6) (citing Goodwin v. Barnhart, 195 F. Supp. 2d 1293, 1295 (D. Kan. 2002)).  She argues the Frey test is required here because the ALJ discounted her allegations because of a "failure to obtain ongoing treatment."  Id., at 7 (citing Potter v. Astrue, No. 11-1377-JWL, 2012 WL 5499509, at *5 (D. Kan. Nov. 13, 2012) ("Because the ALJ found that Plaintiff was noncompliant with prescribed or recommended treatment and used that finding in his credibility determination, it was necessary for the ALJ to apply the Frey test in his credibility determination.")).  In the remainder of her Brief, Plaintiff explains how, in her view, if the Frey test were applied it would be inappropriate for the ALJ to rely on her failure to obtain ongoing treatment.  Id. at 8-9.

The Commissioner argues the ALJ applied the correct legal standard when evaluating Plaintiff's allegations of symptoms and explains how, in her view, the evidence supports the ALJ's evaluation.  (Comm'r Br. 9-13).  She then argues, "The ALJ did not deny benefits on the basis of Plaintiff's failure to comply with a prescribed treatment. Rather, he considered the consistency of Plaintiff's treatment in assessing her subjective symptoms."  Id. at 13 (emphasis in original).  The Commissioner then explains her view of the holding in Qualls, that an ALJ is "not required to make findings from 20 C.F.R. § 404.1530 discussed in Frey in context of symptom evaluation."  Id. at 14.  She notes that although Plaintiff claimed she could not afford treatment for her Crohn's, the ALJ "noted that Plaintiff (1) was able to seek medical attention for other complaints, and (2) when she did so, she failed to voice the allegedly disabling extent of gastrointestinal

5

difficulties she now claims." (Comm'r Br. 15). She concludes that the ALJ provided legally sufficient reasons to discount Plaintiff's allegations of symptoms and the decision should be affirmed. Id. at 17-18.

In her Reply Brief Plaintiff reiterates her argument that not applying the Frey test was error. She points to a case where this court found error in an ALJ's failure to apply the first factor of the Frey test—whether the treatment at issue would restore the claimant's ability to work. (Reply 2-3) (citing Heggie v. Berryhill, No. 17-1013-JWL, 2018 WL 658712, at *4 (D. Kan. Feb. 1, 2018)).

### A.     The ALJ's Findings

Here, the ALJ stated he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p." (R. 24). He recognized that he needed to consider all of the record evidence in accordance with 20 C.F.R. § 404.1529 and listed each of the factors required by that regulation to be considered when assessing a claimant's allegations of symptoms. Id. 25-26. He found Plaintiff's allegations regarding the intensity, persistence, and limiting effect of her symptoms "are not consistent with the evidence" and provided three reasons for discounting those allegations: "the record does not fully support the severity of the claimant's allegations," the "allegations are eroded by her activities of daily living," and the ALJ

> cannot overlook the fact that the claimant has sought no care for her Crohn's for well over two years. It is unclear from her testimony how she has not been able to seek care for her Crohn's symptoms, due to a lack of

> health insurance, when she is continuing to follow with primary care and endocrinology for management of her other impairments. One would expect an individual as limited as the claimant has purported herself (experiencing Crohn's flares multiple times per week) would, at the very least, voice these complaints to her providers. Yet, Crohn's is rarely even mentioned in these records after 2017.

(R. 26-27).

### B.    Analysis

Although neither party mentioned it in her Brief, controlling law on the issue Plaintiff alleges changed almost a year-and-a-half before the ALJ issued his decision in this case on April 14, 2020. <u>Social Security Ruling, SSR 18-3p; Titles II and XVI: Failure to Follow Prescribed Treatment</u>, 2018 WL 4945641 (October 2, 2018 SSA). As that SSR notes in its Supplementary Information, "Although SSRs do not have the same force and effect as law, they are binding on all components of the Social Security Administration in accordance with 20 CFR 402.35(b)(1), and are binding as precedents in adjudicating cases." <u>Id.</u>, 2018 WL 4945641, at *1; <u>see also</u>, <u>Nielson v. Sullivan</u>, 992 F.2d 1118, 1120 (10th Cir. 1993).

SSR 18-3p explains the agency "will determine whether an individual has failed to follow prescribed treatment only if all three [of certain specific] conditions exist." 2018 WL 4945641, *2. The first prerequisite condition is "[t]he individual is otherwise entitled to disability ... benefits under titles II or XVI of the Act." Id. The SSR explains:

> We only perform the failure to follow prescribed treatment analysis discussed in this SSR after we find that an individual is entitled to disability or eligible for statutory blindness benefits under titles II or XVI of the Act, regardless of whether the individual followed the prescribed treatment. We will not determine whether an individual failed to follow prescribed

7

> treatment if we find the individual is not disabled, not blind, or otherwise not entitled to or eligible for benefits under titles II or XVI of the Act.

Id. 2018 WL 4945641 at *3.  Here, the ALJ never found Plaintiff was otherwise entitled to benefits under the Act.  Therefore, consideration of whether Plaintiff followed prescribed treatment was not triggered in this case, and the four-part Frey test never came into play.

Moreover, the court finds that even under the law as previously enforced by the Tenth Circuit Plaintiff would not prevail.  As Plaintiff admits, the ALJ discounted her allegations because of a "failure to obtain ongoing treatment."  (Pl. Br. 7).  Failure to take prescribed medication, to take an injection, chemotherapy, or radiation treatments might properly be considered a failure or refusal to follow prescribed treatment.  Failure to seek treatment or merely to visit a medical provider can hardly be characterized as failure to follow prescribed treatment.  Even if an appointment were scheduled and Plaintiff simply failed to go, it cannot be said that the appointment was prescribed.  Like the situation in Qualls, such a failure reflects primarily on Plaintiff's attempts to relieve her allegedly disabling symptoms from her Crohn's disease.  Plaintiff's failure to seek treatment for her Crohn's, or as the ALJ noted "at the very least, voice these complaints to her providers," suggests her symptoms are not as severe as alleged.

Plaintiff has shown no error in the ALJ's decision.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated March 7, 2022, at Kansas City, Kansas.

                                        s:/ *John W. Lungstrum*
                                        **John W. Lungstrum**
                                        **United States District Judge**